TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 96-302 |
| of | : | |
| | : | January 3, 1997 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE BRUCE McPHERSON, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following question:

For purposes of the California Uniform Retail Food Facilities Law, does a "temporary food facility" include a food facility operating out of temporary facilities at a fixed location one day each week in close proximity to and in conjunction with a certified farmers' market?

**CONCLUSION**

For purposes of the California Uniform Retail Food Facilities Law, a "temporary food facility" does not include a food facility operating out of temporary facilities at a fixed location one day each week in close proximity to and in conjunction with a certified farmers' market.

**ANALYSIS**

The California Uniform Retail Food Facilities Law (Health & Saf. Code, §§ 113700-114455; "CURFFL")**Footnote No. 1** provides uniform statewide health and sanitation standards for retail food facilities. (§ 113705.) Its purpose is "to assure the people of this state that food will be pure, safe, and unadulterated." (*Ibid*.) The question presented for resolution concerns whether a food facility operating out of temporary facilities one day each week in conjunction with a certified farmers' market qualifies for treatment as a "temporary food facility" under the terms of CURFFL. We conclude that it does not.

A "food facility," as defined in CURFFL, means:

"(1) Any food establishment, vehicle, vending machine, produce stand, swap meet prepackaged food stand, temporary food facility, satellite food distribution facility, stationary mobile food preparation unit, and mobile food preparation unit.

"(2) Any place used in conjunction with the operations described in paragraph (1), including, but not limited to, storage facilities for food-related utensils, equipment, and

materials.

> "(3) A certified farmers' market, for purposes of permitting and enforcement." (§ 113785, subd. (a).)

"`Food establishment' means any room, building, or place, or portion thereof, maintained, used, or operated for the purpose of storing, preparing, serving, manufacturing, packaging, transporting, salvaging, or otherwise handling food at the retail level." (§ 113780.) "`Food establishment' does not include . . . a vehicle, vending machine, satellite food distribution facility, temporary food facility, open-air barbecue, certified farmers' market, stationary mobile food preparation unit, or mobile food preparation unit." (*Ibid*.)

A "food establishment" is subject to more rigorous sanitation and structural standards than other types of food facilities, such as a temporary food facility. (Compare §§ 27623-27627, 114105, 114145, and 114150 with §§ 114310-114325.) Walls and ceilings in a temporary food facility may consist of plastic, canvas, fly screening, or similar materials not permitted in the construction of food establishments. Hand washing and waste disposal in a temporary food facility may be set up without permanent plumbing connections. Rest room facilities may be located up to 200 feet away from a temporary food facility. However, like food establishments, temporary food facilities must maintain potentially hazardous foods at appropriate temperatures (§ 27601) and are required to have all of their food contact surfaces in a smooth and cleanable condition (§ 114315).

Section 113895, the focus of our inquiry, states:

> "`Temporary food facility' means a food facility operating out of temporary facilities approved by the enforcement officer at a fixed location for a period of time not to exceed 25 days in any 90-day period in conjunction with a single event or celebration."

Does the language of section 113895 apply to a food facility operating out of temporary facilities approved by an enforcement officer**Footnote No. 2** at a fixed location in close proximity to and in conjunction with a certified farmers' market ("CFM")**Footnote No. 3** one day each week? The food facility would be dismantled and stored off-site until the next weekly staging of the CFM.

Resolution of the question presented requires an examination of what the Legislature meant when it used the phrase "period of time not to exceed 25 days in any 90-day period in conjunction with a single event or celebration." (§ 113895.) In analyzing this language, we first note that if a CFM is conducted on a once-a-week basis, and if *each* weekly CFM is considered a separate "single event or celebration," the food facility would never use more than one day of the 25-day statutory period in any 90 days.**Footnote No. 4** Such an interpretation would allow the food facility to operate as a temporary food facility on a year-round basis under the circumstances presented. Similarly, if the *annual session* of the CFM were to be viewed as a separate single event, and if the food facility were viewed as using only one day of the 25-day allotment each week, it again would be able to stay in operation as a temporary food facility throughout the year. For "any 90-day period," it would be used for less than 15 days under this interpretation of the statutory language.

To determine whether either interpretation may be applied to the terms of section 113895, we look to established principles of statutory construction. "[O]ur first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statutes themselves, giving to the language its usual, ordinary import. . . ." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387.) "[I]t is well established that reports of legislative committees and commissions are part of a statute's legislative history and may be considered when the meaning of a statute is uncertain. [Citations.]" (*Hutnick* v. *United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 465, fn. 7.) "Unless unreasonable or clearly contrary to the statutory language or purpose, the consistent construction of a statute by an agency charged with

responsibility for its implementation is entitled to great deference. [Citation.]" (*Dix* v. *Superior Court* (1991) 53 Cal.3d 462, 460.) "[A] statute should be accorded a reasonable and common sense interpretation, avoiding absurd or impractical results." (*Dakin* v. *Department of Forestry & Fire Protection* (1993) 17 Cal.App.4th 681, 686.) Finally, "a proviso or exception carved out of the general enactment must be construed strictly. . . ." (*San Jose Teachers Assn.* v. *Barozzi* (1991) 230 Cal.App.3d 1376, 1383.)

As indicated above, a CFM is defined as "[a] location . . . where agricultural products are sold by producers or certified producers directly to consumers" (Cal. Code Regs., tit. 3, § 1392.2, subd. (a)) and is itself treated as a "food facility" for purposes of CURFFL. A CFM operates under a certificate which is valid for 12 months from the date of issue (Cal. Code Regs., tit. 3, § 1392.7) and functions as an ongoing marketing enterprise the sole purpose of which is to facilitate the sale of agricultural products directly to the consumer.**Footnote No. 5** As such, a CFM is fundamentally different from the usual type of "single event or celebration" that occurs periodically in communities throughout this state. Such events or celebrations are normally conducted on consecutive days for a finite period of time.**Footnote No. 6** Generally held on an annual basis, they typically commemorate some historic event, celebrate a particular product for which a locality is known, or showcase a particular kind of talent or entertainment. Examples include the Sacramento Jazz Jubilee (held every year over the Memorial Day weekend), the California State Fair (which has an 18-day run culminating on Labor Day each year), county fairs, Pioneer Days in the City of Chico, the Gilroy Garlic Festival, and the City of Dixon's May Fair.

We have examined in detail the legislative history of section 113895 and its predecessor statutes, sections 27538 and 28523. (Stats. 1995, ch. 415, § 6; Stats. 1990, ch. 802, § 1; Stats. 1986, ch. 712, § 13; Stats. 1986, ch. 642, § 2; Stats. 1984, ch. 256, § 1; Stats. 1961, ch. 633, § 2.) It is apparent that a "temporary food facility" was not intended by the Legislature to refer to an ongoing event that continues from week to week beyond the 90-day period and indefinitely. Rather, the Legislature had in mind a single event occurring over a few days each year (or quarter). For example, when the term was first defined, it referred to "a period of time not to exceed 14 days in any 90-day period in conjunction with a single event or celebration." (Stats. 1984, ch. 256, § 1.) When the operating period was increased in 1986 from 14 days to 21 days (Stats. 1986, ch. 712, § 13), the proposed change was explained as follows:

"This section was written to include the temporary food stands operated at most fairgrounds each year. We believe that this definition was based on the premise that none of California's 80 fairs operate for periods which exceed the stated 14-day limit. This is not the case, however, as several of the larger fairs run for periods of up to 21 days each year. According to the language of the Unicode, temporary food facilities which operate for the additional seven days are technically considered full restaurant operations and must comply with a completely different set of standards. This problem could easily be eliminated by extending the 14-day limit to 21 days, thereby including the longer running fairs."

When the 21-day limit was increased to 25 days in 1990 (Stats. 1990, ch. 802, § 1), the report of the Senate Rules Committee dated April 26, 1990, explained the purpose of the amendment as follows:

"Due to a recent change in the length of the Los Angeles Fair to 24 days, the food vendors, without a change in law, would be required to comply with all requirements of the California Uniform Retail Food Facilities Law as permanent restaurant facilities. The bill is intended to extend by 4 days the length of time that these food vendors may operate as a temporary food facility in conjunction with the Los Angeles County Fair."

Since a CFM is not an event held for a finite period of time within the 90-day period, the Department of Health Services, the agency responsible for administering CURFFL (§ 113710), has interpreted a "temporary food facility" as not including a facility that operates from week to week indefinitely in conjunction with a CFM. To receive special treatment, the facility may only operate for 25 or fewer consecutive days in any 90 consecutive day period. A facility operated in conjunction with a weekly CFM

consecutive days in any 90 consecutive day period. A facility operated in conjunction with a weekly CFM does not qualify under this administrative interpretation.

Moreover, an interpretation of section 113895 permitting the open-ended operation of a temporary food facility would significantly increase administrative enforcement duties and would decrease public health protection. By confining the operation of a temporary food facility to a limited number of days within any 90-day period, an enforcement agency has some assurance that the facility's operations will remain as approved within that specified period of time. If, on the other hand, a temporary food facility could be operated on a more or less continuous basis, the enforcement agency would have greater difficulty in maintaining health standards. Given the continual dismantling, storage, and re-erecting of the facilities, an approval one week would unlikely satisfy public health protection needs for subsequent weeks.

Finally, we note that as an exception to the definition of a food establishment (§ 13780), a temporary food facility benefits from less stringent structural and sanitation requirements. Such exceptions, particularly where public health and safety are involved, require a narrow construction.**Footnote No. 7**

We believe that a weekly CFM does not constitute a "single event or celebration" as that phrase is used in section 113895. We therefore conclude that for purposes of CURFFL, a temporary food facility does not include a food facility operating out of temporary facilities at a fixed location one day each week in close proximity to and in conjunction with a CFM.

\* \* \* \* \*

**Footnote No. 1**
All section references hereafter are to the Health and Safety Code.**Return to text**
**Footnote No. 2**
"`Enforcement officer' means the director, agent or environmental health specialists appointed by the Director of Health Services, and all local health officers, directors of environmental health, and their duly authorized registered environmental health specialists and environmental health specialist trainees." (§ 27517.)
**Return to text**
**Footnote No. 3**
As defined above, CFM is a "food facility" (§ 113785), but not a "food establishment" (§ 113780). The sanitation requirements for CFM's are set forth at sections 114345-114350. A CFM "means a location certified by the county agricultural commissioner and operated as specified in Article 6.5 (commencing with section 1392) of Title 3 of the California Code of Regulations." (§ 27512.) Title 3, California Code of Regulations, section 1392.2, subdivision (a), defines a CFM as follows:

"A location approved by the county agricultural commissioner of that county where agricultural products are sold by producers or certified producers directly to consumers. A certified farmers' market may be operated by one or more certified producers, by a nonprofit organization, or by a local government agency."

The proposed food facility must be "in close proximity to" the CFM, since food preparation is prohibited at a CFM. (§ 114350, subd. (b).)
**Footnote No. 4**
We construe "any 90-day period" as being measured from the time when participation in the event commences.
**Footnote No. 5**
The sale of nonagricultural products is not permitted at a CFM. (Cal. Code Regs., tit. 3, § 1392.4, subd. (c).)
**Footnote No. 6**
Some of these events or celebrations may qualify as an "occasional event," which is defined as an event that occurs not more than three days in any 90-day period (§ 113825). Food sales and distribution at such events are exempt from regulation under CURFFL if they are conducted by a nonprofit association or if they are conducted for the benefit of a nonprofit association by a for-profit entity which receives no monetary benefit other than that resulting from recognition for participating in the event. (§ 113875, subd. (b).)
**Footnote No. 7**

The operators of a CFM are not without options in providing their customers with food facilities. Mobile food preparation units, open-air barbecues, satellite food distribution facilities, and stationary mobile food preparation units are other food facilities that may be employed in connection with a CFM. (See §§ 113815, 113830, 113880, 113890.)