[No. D055579. Fourth Dist., Div. One. July 2, 2010.]

TORREY HILLS COMMUNITY COALITION, Plaintiff and Appellant, v. CITY OF SAN DIEGO, Defendant and Respondent; WESTBROOK TORREY HILLS, L.P., et al., Real Parties in Interest and Respondents.

430

432

COUNSEL

Julie M. Hamilton for Plaintiff and Appellant.

Jan I. Goldsmith, City Attorney, and Carmen A. Brock, Deputy City Attorney, for Defendant and Respondent.

Latham & Watkins, Daniel P. Brunton, Ryan R. Waterman; Haynie Law Group and Allen D. Haynie for Real Parties in Interest and Respondents.

OPINION

McCONNELL, P. J.—Torrey Hills Community Coalition (Torrey Hills) appeals a judgment dismissing its petition for writ of mandate challenging the City of San Diego's (the City) approval of a development project by real parties in interest Westbrook Torrey Hills, L.P., AME Torrey View, LLC, and Pacific Centre Carmel Valley, LLC (collectively Westbrook). The trial court found Torrey Hills (1) violated Government Code section 66499.37, which applies to claims made under the Subdivision Map Act (SMA) (Gov. Code, § 66410 et seq.), by not serving a summons within 90 days of the City's approval of the project; and (2) violated Public Resources Code section 21167.4, subdivision (a), by not filing a written request for a hearing within 90 days of the filing of the writ petition on claims brought under the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.). As to the first issue, Torrey Hills contends the 90-day period was tolled under Code of Civil Procedure section 583.240, subdivision (d) for impossibility. As to the second issue, Torrey Hills contends the court misinterpreted Public Resources Code section 21167.4, subdivision (a) to require a written request, and it raises an impossibility argument. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Westbrook's project consists of 484 condominium units and 4,000 square feet of retail space. On September 16, 2008, the City took several actions to approve the project, including certifying the final environmental impact report, rezoning the property from light industrial and 29 dwelling units per acre to 54.5 dwelling units per acre and open space, amending the applicable community plan, granting a vesting tentative map allowing the subdivision of four existing lots into seven lots, and issuing a planned development permit.

On November 10, 2008, Torrey Hills filed a petition for writ of mandate challenging the City's approval of the project. The first and third through sixth counts of the petition alleged the approval violated CEQA; the second count alleged the approval violated the City's procedures for implementing CEQA; the seventh count alleged the City's findings on the development permit lacked evidentiary support, and the eighth count alleged the City's findings on the tentative map lacked evidentiary support. It is undisputed that all claims in the petition fall within the scope of the SMA.

On January 16, 2009, the City and Westbrook specially appeared to move to dismiss the petition for failure to serve a summons within 90 days of the

City's approval of the project on September 16, 2008, as required by Government Code section 66499.37, a provision of the SMA.

On February 5, 2009, Torrey Hills's counsel telephoned the trial court clerk and requested a hearing date on the writ petition and an ex parte hearing on her request for a continuance on the motion to dismiss. The clerk gave counsel an ex parte hearing date of February 10, but she did not give counsel a date for the hearing on the writ petition. After the ex parte hearing, Torrey Hills's counsel telephoned the clerk about a hearing date for the writ petition, and she advised counsel the judge would prefer to wait until after deciding the motion to dismiss to set a hearing on the petition. Torrey Hills did not file a written request for a hearing on or before February 9, 2009.

On March 4, 2009, the City and Westbrook amended their motion to dismiss to allege Torrey Hills's CEQA claims should be dismissed for the additional reason that it failed to file a written request for a hearing within 90 days of the date of filing the petition pursuant to Public Resources Code section 21167.4, subdivision (a).

After a March 27, 2009 hearing on the motion to dismiss, the court took the matter under submission. On April 17, Torrey Hills filed a document entitled "Notice of Request for Hearing" (some capitalization omitted), which notified the City and Westbrook that on February 5, 2009, Torrey Hills's counsel had orally requested a hearing date from the court clerk on the writ petition, and the clerk advised counsel that the judge would rather wait until disposition of the motion to dismiss.

In an April 28, 2009 minute order, the court granted the amended motion to dismiss on both grounds raised—the lack of service of summons within 90 days of the City's approval of the project (Gov. Code, § 66499.37), and the failure to make a written request for a hearing within 90 days of filing a CEQA petition (Pub. Resources Code, § 21167.4, subd. (a)). A judgment of dismissal was entered on May 18, 2009.

## DISCUSSION

### I

*Standard of Review*

We independently review an order granting a motion to dismiss a petition for writ of mandate. (*Friends of Riverside's Hills v. City of Riverside* (2008) 168 Cal.App.4th 743, 748 [85 Cal.Rptr.3d 695] (*Friends*).)

II

*Service of Summons*

A

■ "A summons in an action or proceeding is issued by the clerk of the court, to be served on the defendant in a manner authorized by law. It is the usual means by which the court gives jurisdictional notice to the defendant, directs the defendant's appearance, and thus acquires jurisdiction of the defendant's person. [Citations.] A summons may be had at the simple request of the plaintiff and may be served either by a court officer or a private individual." (3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 960, p. 1184.)

The SMA contains a summons requirement for any action to challenge an agency decision pertaining to a subdivision: "Any action or proceeding to attack, review, set aside, void, or annul the decision of an advisory agency, appeal board, or legislative body concerning a subdivision, or of any of the proceedings, acts, or determinations taken, done, or made prior to the decision, or to determine the reasonableness, legality, or validity of any condition attached thereto . . . *shall not be maintained by any person unless the action or proceeding is commenced and service of summons effected within 90 days after the date of the decision.* Thereafter all persons are barred from any action or proceeding . . . ." (Gov. Code, § 66499.37, italics added.)

■ "Case law has made it clear that this 90-day service of summons requirement is mandatory and acts as a statute of limitations, barring actions under the SMA in which the service of summons is not accomplished within 90 days after the challenged decision of the legislative or advisory body." (*Friends, supra,* 168 Cal.App.4th at p. 749.) The "90-day requirement applies to all types of actions seeking review of a legislative or advisory body's subdivision-related decisions under the SMA, regardless of the legal basis." (*Id.* at p. 750.)

In *Friends,* which was published on November 24, 2008, the court held as a matter of first impression that CEQA challenges raised in a writ petition that pertain to an agency's decision concerning a subdivision under the SMA are subject to the 90-day service of summons requirement. (*Friends, supra,*

168 Cal.App.4th at p. 756 ["Friends was required to comply with the 90-day summons requirement for the CEQA cause of action, because it both overlapped with the SMA causes of action and could have been (and was) brought under the SMA."].)[1]

B

Torrey Hills does not contest the court's findings that all claims in its writ petition fell within the scope of the SMA and could have been brought under the SMA. It also concedes it did not meet the 90-day service of summons requirement. The 90-day period expired on December 15, 2008. It contends, however, that the 90-day period was tolled under Code of Civil Procedure section 583.240, subdivision (d) for impossibility.

Code of Civil Procedure section 583.240, subdivision (d), provides that "[i]n computing the time within which service must be made *pursuant to this article*, there shall be excluded the time during which" service "was impossible, impracticable, or futile due to causes beyond the plaintiff's control." (Italics added.) Torrey Hills cites no authority for the proposition that this statute applies to the 90-day requirement under Government Code section 66499.37. In *Maginn v. City of Glendale* (1999) 72 Cal.App.4th 1102, 1108 [85 Cal.Rptr.2d 639], the court assumed for purposes of discussion that it could consider Code of Civil Procedure section 583.240, subdivision (d) in the context of the 90-day rule, but on the facts the court rejected the impossibility argument.

▮  Even if Code of Civil Procedure section 583.240, subdivision (d), is applicable here, Torrey Hills has made an insufficient showing of impossibility. The "exceptions codified in [Code of Civil Procedure] section 583.240, subdivision (d) must be construed strictly against the plaintiff." (*Shipley v. Sugita* (1996) 50 Cal.App.4th 320, 326 [57 Cal.Rptr.2d 750].) " 'The excuse of impossibility, impracticability, or futility should be strictly construed in light of the need to give a defendant adequate notice of the action so that the defendant can take necessary steps to preserve evidence.' " (*Bishop v. Silva* (1991) 234 Cal.App.3d 1317, 1322 [285 Cal.Rptr. 910].) When the plaintiff's problems are within its control, no relief is available. (*Ibid.*) The " 'plaintiff must exercise diligence' " in serving the summons. (*Ibid.*)

*Friends, supra*, 168 Cal.App.4th 743, was published on November 24, 2008. Torrey Hills claims it would have been impossible to obtain a summons by the deadline of December 15, 2008, because, even after the publication of

---

[1] *Friends* was originally filed on October 24, 2008, as an unpublished opinion. The opinion was published on November 24, 2008.

*Friends*, "the San Diego Superior Court continued to refuse to issue a summons for any [writ petition] containing a CEQA cause of action." Torrey Hills relies on a March 3, 2009 declaration by Kathy Bailey, who between 2006 and February 16, 2009, was the operations manager for the San Diego County Superior Court's civil business office. The declaration states that during her stint it was the court's "policy . . . not to issue a summons for a . . . Petition for Writ of Administrative Mandamus containing a [CEQA] Cause of Action."

Torrey Hills also cites the March 16, 2009 declaration of Everett DeLano III, which states: "As a practicing attorney specializing in environmental and land use law, I am familiar with the San Diego Superior Court's Rules of Court and the practices of the Civil Business Office in filing Petitions for Writ of Mandate. It has been my experience the Civil Business Office will refuse to issue a Summons for a Petition for Writ of Mandate or Administrative Mandamus. I have been filing such petitions for several years and was never issued a summons, even when requested." The declaration also states: "Recently, my office requested the San Diego Superior Court Civil Business Office to issue a summons for a Petition for Writ of Mandate. This request was refused; the clerk informed my office they would not issue a summons on a writ petition."

Further, Torrey Hills relies on the declaration of Attorney Craig Sherman, which states he filed a petition for writ of mandate on December 19, 2008, and the court refused to issue a summons. On February 9, 2009, he learned "of a new published decision" that required service of summons in CEQA actions. He believed he had to serve a summons in his writ proceeding, or risk having the case dismissed, and thus he sent his law clerk to the court with a copy of the decision to demand the issuance of a summons. The court clerk initially refused, but ultimately issued a summons.

Additionally, Torrey Hills's counsel, Julie Hamilton, submitted a declaration that stated she had practiced environmental and land use law since 1999, and "it has always been my experience the Court will refuse to issue a summons for Petitions for Writ of Mandate, attempting to procure a summons for a Petition of Writ of Mandate in San Diego [County] Superior Court is a futile effort."

We conclude Torrey Hills's evidence does not establish impossibility. The petitioner has the burden of showing diligence as a prerequisite to obtaining relief under Code of Civil Procedure section 583.240, subdivision (d). (*Williams v. Los Angeles Unified School Dist.* (1994) 23 Cal.App.4th 84, 102

[28 Cal.Rptr.2d 219].) There is no suggestion that after the publication of *Friends* on November 24, 2008, Torrey Hills made any effort whatsoever to obtain a summons before the December 15 deadline, and thus there is no showing of diligence to support an impossibility theory. The court's ruling states: "There is no evidence of specific request made by Petitioner to the court for the issuance of summons based on the holding of [*Friends, supra,* 168 Cal.App.4th 743] prior to the deadline of Dec. 15, 2008." How Torrey Hills responded to *Friends* was within the control of its counsel.

■   This case is similar to *Renoir v. Redstar Corp.* (2004) 123 Cal.App.4th 1145 [20 Cal.Rptr.3d 603], in which the plaintiffs asserted they were excused from serving a summons because "a superior court clerk had informed them that a summons for an action to enforce a foreign money judgment is not required." (*Id.* at p. 1154.) In rejecting the assertion, the court noted the plaintiffs did not claim "they ever attempted to obtain such a summons," and "[h]ad [they] been unable to obtain such a summons, their remedy would have been to apply to the court to require the clerk to perform this responsibility." (*Ibid.*) The issuance of a summons is a routine ministerial duty of the court clerk. (*Maginn v. City of Glendale, supra,* 72 Cal.App.4th at p. 1107; Code Civ. Proc., § 412.10 ["After payment of all applicable fees, the plaintiff may have the clerk issue one or more summons for any defendant."].) "The clerk, as a ministerial officer of the court, is subject to the control of the judge," and the "normal remedy of a party aggrieved by an act or omission of the clerk is to apply to the court for an order directed to the clerk." (2 Witkin, Cal. Procedure, *supra,* Courts, § 362, p. 463.)

■   We are unpersuaded by Torrey Hills's argument that *Friends* should be applied only to writ petitions filed after its date of publication. " ' "As a rule, judicial decisions apply 'retroactively.' [Citation.] Indeed, a legal system based on precedent has a built-in presumption of retroactivity." ' [Citation.] ' "The general rule that judicial decisions are given retroactive effect is basic in our legal tradition." [Citation.] Courts sometimes make an exception to this general rule when the decision changed a settled rule on which the parties had relied.' [Citation.] But where 'we are merely deciding a legal question, not changing a previously settled rule,' no reason exists to apply the exception." (*County of Sacramento v. Superior Court* (2009) 180 Cal.App.4th 943, 953 [103 Cal.Rptr.3d 449] (*County of Sacramento*).) When an appellate court interprets statutory language, even as a matter of first impression, it is "bound by the general rule that judicial decisions are given retroactive effect." (*Id.* at p. 954.)

*Friends* is the first published opinion interpreting Government Code section 66499.37's 90-day service of summons requirement as applying to a CEQA cause of action pertaining to a subdivision. The court, however, explained that "there is ample case law holding that the 90-day requirement applies to all types of actions seeking review of a legislative or advisory body's subdivision-related decisions under the SMA, regardless of the legal basis." (*Friends, supra,* 168 Cal.App.4th at p. 750, citing *Presenting Jamul v. Board of Supervisors* (1991) 231 Cal.App.3d 665, 671–672 [282 Cal.Rptr. 564]; *Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 26–27 [32 Cal.Rptr.2d 244, 876 P.2d 1043].) The court's holding in *Friends* did not materially change the law. Rather, its holding " 'simply becomes part of the body of case law of this state, and under ordinary principles of stare decisis applies in all cases not yet final.' " (*County of Sacramento, supra,* 180 Cal.App.4th at p. 953.) Further, there is no fundamental unfairness in applying *Friends* to this case, as Torrey Hills had adequate time after its publication to seek a summons.

■ The court properly dismissed Torrey Hills's entire petition for writ relief because it did not serve the summons on Westbrook within the 90-day period set forth in Government Code section 66499.37.[2]

III

*Request for Hearing*

Although the above discussion is dispositive, we address Torrey Hills's contention the court erred by dismissing the CEQA claims in the writ petition on the additional ground that it did not request a hearing in writing as required by Public Resources Code section 21167.4 (hereafter section 21167.4). Section 21167.4, subdivision (a), a provision of CEQA, provides: "In any action or proceeding alleging noncompliance with this division, the petitioner shall request a hearing within 90 days from the date of filing the petition or shall be subject to dismissal on the court's own motion or on the motion of any party interested in the action or proceeding." (§ 21167.4, subd. (a).)

In Torrey Hills's view, it was not required to make a written request for a hearing because subdivision (a) of section 21167.4 does not refer to a written request. Rather, the oral request of its counsel on February 5, 2009, a few

---

[2] The writ petition's eighth count was brought under the SMA and did not contain any overlapping CEQA claims. Accordingly, *Friends* did not affect the eighth cause of action. At the hearing, real parties in interest argued that before *Friends,* it was established in San Diego County that a summons was required for an SMA claim. Torrey Hills did not dispute that.

days before the February 9 deadline, was sufficient. We are unpersuaded, however, because other subdivisions of section 21167.4 establish the requirement of a written request.

■ In interpreting a statute, we strive to ascertain the Legislature's intent. "We give the words of the statute ' "their usual and ordinary meaning." ' [Citation.] ' "Words must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible." ' " (*People v. Loeun* (1997) 17 Cal.4th 1, 9 [69 Cal.Rptr.2d 776, 947 P.2d 1313].) " ' "It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute." A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error.' " (*Rodriguez v. Superior Court* (1993) 14 Cal.App.4th 1260, 1269 [18 Cal.Rptr.2d 120].) " 'If there is no ambiguity in the language of the statute, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." [Citation.] "Where the statute is clear, courts will not 'interpret away clear language in favor of an ambiguity that does not exist.' [Citation.]" ' " (*People v. Loeun, supra*, at p. 9.)

■ Subdivision (b) of section 21167.4 provides that the "petitioner shall serve a notice of the request for a hearing on all parties at the time that the petitioner *files the request for a hearing*." (Italics added.) Subdivision (c) of section 21167.4 provides in part: "Upon the *filing of a request* by the petitioner for a hearing and upon application by any party, the court shall establish a briefing schedule and a hearing date. In the absence of good cause, briefing shall be completed within 90 days from the date that the *request for a hearing is filed*, and the hearing, to the extent feasible, shall be held within 30 days thereafter." (Italics added.) Obviously, a written request is required even though subdivision (a) of section 21167.4 does not expressly refer to a writing. Under Torrey Hills's theory, we would have to ignore the language of subdivisions (b) and (c) of the statute. As the court held in *County of Sacramento, supra*, 180 Cal.App.4th 943, when subdivisions (a), (b) and (c) of section 21167.4 are read together, "it is plain that the 'request [for] a hearing' required by subdivision (a) must be in a writing filed with the court, or else subdivisions (b) and (c) of the statute will not operate." (*County of Sacramento*, at p. 953.)

■ Further, an oral request for hearing does not serve the purposes of section 21167.4. After the petitioner serves and files a written request, any party may request a briefing schedule and hearing date. (§ 21167.4, subd. (c).) An oral request of which the opposing party has no notice defeats that

purpose. Torrey Hills was required to file a written request for a hearing. We disagree with its assertion there is a "lack of clarity in the statute."

Torrey Hills submits that since *County of Sacramento, supra*, 180 Cal.App.4th 943, was not decided until December 29, 2009, when its counsel orally requested a hearing on the writ petition "there was no clear requirement the hearing must be requested in writing." Torrey Hills asserts it would be unfair to apply *County of Sacramento* retroactively.

In *County of Sacramento, supra*, 180 Cal.App.4th at page 953, the court concluded its holding should be applied retroactively. The court explained its holding did not change a settled rule or case on which the petitioner could have reasonably relied in not filing and serving a written request for a hearing within 90 days of filing its writ petition. The court noted, "All we have done today is determine definitively, for the first time, that the 'request [for] a hearing' required by subdivision (a) of section 21167.4 must be a writing filed with the court. . . . [T]he fact that no previous appellate decision made this clear does not justify giving our decision prospective application only; instead, we are bound by the general rule that judicial decisions are given retroactive effect." (*County of Sacramento, supra*, at p. 954, fn. omitted.)

We agree with the *County of Sacramento* analysis on retroactivity.[3] We also note that the trial court made its decision here on April 28, 2009, about eight months before *County of Sacramento* was decided, and thus there was no reliance on that opinion. Further, we need not rely on *County of Sacramento* because without it we would also interpret section 21167.4 against Torrey Hills based on the plain terms of the statute.

Further, Torrey Hills's reliance on *McCormick v. Board of Supervisors* (1988) 198 Cal.App.3d 352 [243 Cal.Rptr. 617] (*McCormick*), is misplaced. In *McCormick, supra*, at page 358, the court explained that under section 21167.4, a petitioner need only "take affirmative steps sufficient to place the matter on the court's docket for a hearing, either by filing and serving a

---

[3] Torrey Hills's reliance on *Dakin v. Department of Forestry & Fire Protection* (1993) 17 Cal.App.4th 681 [21 Cal.Rptr.2d 490], is misplaced. In *Dakin*, the court concluded section 21167.4 applied to an action challenging the approval of a timber harvest plan by the Department of Forestry and Fire Protection. The court applied its holding prospectively because several years earlier it had "filed an opinion ruling the statute inapplicable" to such an action, and that "opinion was the only law on the subject and was no doubt relied on by parties to timber harvest cases." (*Dakin*, at p. 688.) In contrast to *Dakin*, there is no appellate opinion on which Torrey Hills reasonably relied in not requesting a hearing in writing.

notice of hearing or utilizing some other method authorized by the local rules of the court in which the matter is pending."[4] When *McCormick* was decided in 1988, however, section 21167.4 consisted only of what is now subdivision (a) of the statute, and thus the statute contained no reference to a filing. *McCormick* predates the 1993 and 1994 addition of subdivisions (b) and (c) to section 21167.4, which plainly show a written request must be served and filed. (Stats. 1993, ch. 1130, § 20, p. 6331; Stats. 1994, ch. 1294, § 21, pp. 8325–8326.) *County of Sacramento, supra*, 180 Cal.App.4th at page 951, pointed out that *McCormick* has not been good law "for the last 15 years," but Torrey Hills persists in relying on it. (See also *Association for Sensible Development at Northstar, Inc. v. Placer County* (2004) 122 Cal.App.4th 1289, 1294 [19 Cal.Rptr.3d 440] [pointing out that *McCormick* is no longer good law].)

We also reject Torrey Hills's argument that filing a written request for a hearing would have been futile within the meaning of Code of Civil Procedure section 583.240, subdivision (d), because when its counsel phoned the court clerk on February 5, 2009, for a hearing date, on February 10 the clerk advised counsel that the court preferred not to set a hearing until after the motion to dismiss was heard. Torrey Hills asserts the 90-day period within which to request a hearing expired on February 12, and after its counsel learned of the court's position on February 10 there was no reason to take any further action. The 90-day period, however, expired on February 9, *before* counsel learned of the court's position. Thus, Torrey Hills has not shown diligence. Further, Public Resources Code section 21167.4, subdivision (a) did not require Torrey Hills to obtain a hearing date. Rather, the statute merely required Torrey Hills to file and serve a *request* for a hearing date, and it would not have been futile to make the request. (See *Association for Sensible Development at Northstar, Inc. v. Placer County, supra*, 122 Cal.App.4th at p. 1294 [subd. (a) of § 21167.4 only requires petitioner to file *request* for hearing; it does not require petitioner to obtain hearing date].) Under subdivision (c) of section 21167.4, a briefing schedule and hearing date could be established later "upon application by any party." In *County of Sacramento, supra*, 180 Cal.App.4th at page 954, the court rejected a similar futility argument.

---

[4] Torrey Hills asserts that under the San Diego County Superior Court, Local Rules, a writ proceeding is subject to law and motion procedure, under which a party need only call the department calendar clerk to request a hearing. Torrey Hills cites rule 2.4.8.A., which provides that for extraordinary writs the "noticed motion procedure should be used whenever possible." Torrey Hills does not cite any local rule number, or other authority, for the proposition that under noticed motion procedure an oral request for a hearing suffices.

## DISPOSITION

The judgment is affirmed. Respondents are entitled to costs on appeal.

McIntyre, J., and Irion, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 13, 2010, S185336.