Filed 2/10/22  HUM CPR Affiliates v. County of Humboldt CA1/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| HUM CPR AFFILIATES et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>COUNTY OF HUMBOLDT et al.,<br><br>    Defendants and Appellants. | A161918<br><br>(Humboldt County<br>Super. Ct. No. CV190875) |

HUM CPR Affiliates and HUM CPR (collectively, HUM CPR) filed a petition for a writ of mandate under the California Environmental Quality Act (CEQA)[1] to challenge the County of Humboldt's amendments of two zoning definitions in its general plan.  The County of Humboldt, the Humboldt County Board of Supervisors, and the Humboldt County Planning Director (collectively, the County) moved to dismiss for HUM CPR's failure to comply with section 21167.4, which mandates that a petitioner in a CEQA action file a request for a hearing on the merits within 90 days of filing the petition.  The trial court denied the motion to dismiss, but it ultimately entered judgment in the County's favor after rejecting HUM CPR's claims on

---

[1] Public Resources Code section 21000 et sequitur.  All further statutory references are to the Public Resources Code unless otherwise noted.

1

the merits. HUM CPR appealed from the judgment, and the County cross-appealed to challenge the denial of its motion to dismiss.

We hold that the trial court should have granted the County's motion to dismiss.[2] On appeal, HUM CPR does not claim that it complied with the 90-day deadline for filing a request for a hearing under section 21167.4, subdivision (a) (section 21167.4(a)), which makes dismissal mandatory for noncompliance. Instead, it claims that the trial court properly denied the motion under Code of Civil Procedure section 473, subdivision (b) (section 473(b)), which authorizes a court to grant a party relief from the consequences of the party's "mistake, inadvertence, surprise, or excusable neglect." We agree with the County, however, that relief under section 473(b) was unavailable because HUM CPR's failure to file the request for a hearing within the strict 90-day deadline was not legally excusable. We therefore vacate the judgment, reverse the order denying the County's motion to dismiss, and dismiss HUM CPR's appeal as moot.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

HUM CPR filed its petition for a writ of mandate in the trial court on October 4, 2019, making January 2, 2020, the deadline under

---

[2] As a result, we need not resolve HUM CPR's claim that the trial court erred by denying the petition on the basis that the County complied with CEQA, although we question whether the claim has merit. The threshold issue here is whether substantial evidence supports the County's finding under section 21166 that no further environmental review was required, yet HUM CPR focuses primarily on whether the County complied with section 21094, which does not apply unless a project is subject to section 21166. (See § 21094, subd. (b)(3); *Sierra Club v. County of Sonoma* (1992) 6 Cal.App.4th 1307, 1319–1320.)

2

section 21167.4(a) for it to submit a written request for a hearing. It did not file such a request by that date.

The procedural background includes some irregularities. On October 17, 2019, shortly after the petition was filed, HUM CPR lodged with the trial court an uncertified administrative record. Usually, in a CEQA action the public agency prepares and certifies the administrative record and submits it to the court. (§ 21167.6, subds. (a), (b)(1).) HUM CPR, however, elected to proceed under a provision that allows a petitioner to submit the record itself, "subject to certification of [the record's] accuracy by the public agency," as authorized under section 21167.6, subdivision (b)(2).

On October 21, the superior court clerk issued a notice of a "Writ of Mandate Hearing" for December 27. The notice was served only on counsel for HUM CPR, and it was issued prematurely since no party had requested a hearing. As the trial court later explained, HUM CPR's lodging of the administrative record, "which is generally done by the agency," had "trigger[ed]" the clerk's premature issuance of the notice of hearing.

The parties disputed whether the submitted administrative record was complete, and on November 25, HUM CPR filed a motion for determination of the administrative record (record motion) and noticed a hearing for December 23. The County responded by identifying numerous additional documents it contended should be included in the record. The hearing was held on the noticed date (December 23), and the trial court took the matter under submission.

At the December 23 hearing, the hearing that had been scheduled for December 27 was discussed. Counsel for the County indicated she was unaware of any such scheduled hearing, and the trial court confirmed that

3

the hearing notice had been sent only to HUM CPR. With the parties' agreement, the court vacated the December 27 hearing.

Counsel for HUM CPR then proposed that the trial court "issue some type of ruling so we could get the record lodged appropriately and then we would have some type of a schedule . . . so we could move this along." Counsel for the County pointed out that the County's response to the record motion included a proposed order with a schedule for finalizing the administrative record "that would get us to a certified record in about 60 days," at which time "we would be ready to discuss a briefing schedule and moving the case forward." Counsel for HUM CPR objected, stating, "We're going to go forward. They've had all the documents since October. They've also had their own documents with respect to augmenting them pursuant to whatever order the court has. There really should be no more than 60 days, then, for a briefing schedule. I'd like to move this along, not drag it out." The court stated it would "indicate future dates" when it ruled on the record motion.

The ruling on the record motion was not issued by the January 2, 2020 deadline for HUM CPR to submit a written request for a hearing under section 21167.4(a). On January 10, the County filed a motion to dismiss the petition for noncompliance with that provision. HUM CPR filed an opposition to the motion on January 29, arguing that it had "substantially complied" with section 21167.4. Alternatively, it argued that its "request for hearing orally on the record [at the December 23 hearing] with opposing counsel present," and without any suggestion by opposing counsel that written notice would be demanded, qualified as "inadvertence or excusable neglect" entitling it to relief under section 473(b). In an accompanying declaration, HUM CPR's counsel averred that she "believe[d] the matter

4

[was] fully resolved at the December 23 . . . hearing, after the request [for a hearing] was made in open court, full argument by both parties had been concluded[,] and the briefing schedule and hearing date had been submitted by both parties for [the trial court's] determination," which "led [her] to the reasonable conclusion that sending a post[-]hearing notice and request for hearing [would] be totally superfluous."

On February 7, the trial court issued a written order on the record motion. The order directed that certain documents be added to the administrative record and set deadlines for preparing, certifying, and lodging the record with the court. Noting that the case would be "back before the court" on February 14 for the hearing on the County's motion to dismiss, the court declined to set a briefing schedule or a date for a merits hearing.

In opposing the motion to dismiss at the February 14 hearing, HUM CPR's counsel argued, "When I raised this issue at the December 23rd hearing, it was precisely to avoid this situation, which is why I ask[ed] that we address it on the record, and, at that time, we had no opposition that the Court could not consider it on the record, and the Court then put the matter over to be scheduled consistent with the determination of what the [administrative] record was. [¶] Based on that, as I said in my brief, it would have been superfluous for me to walk out after [c]ounsel was noticed in the courtroom. The Court has stated on the record that it would decide the hearing and a briefing schedule consistent with its decision on the record." Counsel for the County responded that the 90-day deadline had not yet run at the time of the December 23 hearing, and at that point HUM CPR still could have complied with its duty to file a written request for a hearing.

The trial court denied the motion to dismiss, determining it was appropriate to grant relief to HUM CPR under section 473(b). The court

observed that this case was unlike many of the decisions it had reviewed, where "parties sat on their hands, and there wasn't any activity." The court elaborated that "[w]hat is unique and very different about this case is that we were actually in court all together on the record prior to the 90 days expiring. [¶] We did talk about setting hearing dates. The record had not yet been established." The court recalled that HUM CPR "wanted the matter set quickly" at the December 23 hearing, which "didn't make any sense to [the court] given we didn't have any ruling on what's going to be in the record." The court also observed that due to "an unusual set of circumstances," "the clerk's office, on its own, set the matter for hearing," and the County did not receive notice because it had not yet filed a responsive pleading. Noting that "dismissal is such a harsh outcome," the court concluded that the "unusual situation" presented warranted "excus[ing] the filing" of a written request for a hearing.

The County filed a petition for a writ of mandate in this court on March 4, 2020, to challenge the denial of the motion to dismiss. On March 10, HUM CPR finally filed a request for a hearing under section 21167.4(a) in the trial court. The following day, the trial court stayed proceedings until this court ruled on the writ petition. This court ultimately denied the petition on April 8 for the County's failure to show that appeal was an inadequate remedy.

The following day, April 9, the administrative record was certified, and the County answered HUM CPR's petition. At a hearing on June 8, the trial court ordered a briefing schedule. Briefing was completed by August 27, and the hearing on the merits was finally held on September 25.

The trial court denied HUM CPR's petition on December 14, 2020. In its written ruling, the court found that the zoning amendments at issue did

6

not require the County to engage in further environmental evaluation. Judgment was then entered in the County's favor.

## II.
### DISCUSSION

The County argues that the trial court erred by denying its motion to dismiss for HUM CPR's failure to request a hearing within the 90-day deadline under section 21167.4(a). We agree. Notwithstanding the unusual procedural circumstances of this case, it was not legally excusable for HUM CPR to fail to file a timely written request for a hearing.

### A.    *General Legal Standards*

Section 21167.4 provides that "[i]n any action or proceeding alleging noncompliance with this division, the petitioner shall request a hearing within 90 days from the date of filing the petition or shall be subject to dismissal on the court's own motion or on the motion of any party interested in the action or proceeding." (§ 21167.4(a).) The statute further provides that "[t]he petitioner shall serve a notice of the request for a hearing on all parties at the time that the petitioner files the request for a hearing." (§ 21167.4, subd. (b).) "The hearing that must be requested is a hearing on the merits of the petition." (*Nacimiento Regional Water Management Advisory Com. v. Monterey County Water Resources Agency* (2004) 122 Cal.App.4th 961, 966.) It is also settled that the request must be written, not oral. (*Torrey Hills Community Coalition v. City of San Diego* (2010) 186 Cal.App.4th 429, 440 (*Torrey Hills*); *County of Sacramento v. Superior Court* (2009) 180 Cal.App.4th 943, 949 (*County of Sacramento*).)

Under section 21167.4, subdivision (c) (section 21167.4(c)), once the request for a hearing is filed and served "and upon application by any party," the trial court "shall establish a briefing schedule and a hearing date." Absent "good cause" otherwise, briefing must be completed 90 days from the

7

date the request is filed, and "to the extent feasible," the hearing must be held 30 days after briefing is complete. (*Ibid.*) While "the petitioner controls the timing," within the initial 90-day timeframe, of when the request for a hearing is filed, "either the petitioner *or* the respondent can force the trial court to set a hearing by filing an 'application' as soon as the petitioner completes this first step. Either party may move the petition to a hearing on the merits, swiftly satisfying the legislative intent that these proceedings be conducted expeditiously." (*Association for Sensible Development at Northstar, Inc. v. Placer County* (2004) 122 Cal.App.4th 1289, 1294–1295; see *Nacimiento Regional Water Management Advisory Com. v. Monterey County Water Resources Agency*, *supra*, 122 Cal.App.4th at p. 968 [Legislature "plainly intended that a CEQA challenge be heard within 210 days of commencement, or roughly seven months, absent exceptional circumstances"].)

Section 21167.4(a) makes "the dismissal of a CEQA claim . . . *mandatory* when a petitioner has failed to request a hearing on the writ within 90 days and a party or the court, sua sponte, moves to dismiss." (*San Franciscans for Reasonable Growth v. City and County of San Francisco* (1987) 189 Cal.App.3d 498, 504, italics added; accord *Comunidad en Accion v. Los Angeles City Council* (2013) 219 Cal.App.4th 1116, 1131 (*Comunidad en Accion*); *Fiorentino v. City of Fresno* (2007) 150 Cal.App.4th 596, 605.) In other words, under the provision's "unambiguous" language, courts have no choice but to grant a motion to dismiss brought after a petitioner neglects to file a timely request for a hearing. (*Fiorentino*, at p. 605.)

A party may seek relief under section 473(b) for its failure to comply with section 21167.4(a). (*Comunidad en Accion*, *supra*, 219 Cal.App.4th at p. 1132; *Miller v. City of Hermosa Beach* (1993) 13 Cal.App.4th 1118, 1135–

1136.)  Section 473(b) vests trial courts with discretion, "upon any terms as may be just, [to] relieve a party or [the party's] legal representative from a judgment, dismissal, order, or other proceeding taken against [the party] through [the party's] mistake, inadvertence, surprise, or excusable neglect."[3] Whether to grant relief under section 473(b) for failure to comply with section 21167.4(a) "implicates two competing public policies—the strong preference for a trial on the merits and the policy favoring expeditious review of CEQA challenges."  (*Comunidad en Accion*, at p. 1131.)  Thus, while generally section 473(b) is "to be 'applied liberally' in favor of relief," with " 'any doubts in applying [the provision] . . . resolved in favor of the party seeking relief from default' " (*Minick*, *supra*, 3 Cal.App.5th at p. 24), this principle is tempered in CEQA cases:  The policy underlying section 473(b) of favoring trial on the merits "cannot invariably prevail over competing policies, including those that 'favor getting cases to trial on time, avoiding unnecessary and prejudicial delay, and preventing litigants from playing fast

___

[3] Section 473(b) also provides for mandatory relief from a default judgment or dismissal that " 'is the result of [a party's] attorney's mistake, inadvertence, surprise, or neglect, without regard to whether the neglect is excusable.' "  (*Gee v. Greyhound Lines, Inc.* (2016) 6 Cal.App.5th 477, 491–492, italics omitted; *Minick v. City of Petaluma* (2016) 3 Cal.App.5th 15, 25 (*Minick*).)  HUM CPR has never claimed that it was entitled to mandatory relief under this provision, which clearly does not apply because no default judgment or "dismissal [that] was the procedural equivalent of a default judgment" ever occurred.  (*Younessi v. Woolf* (2016) 244 Cal.App.4th 1137, 1148–1149; *Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 616 [rejecting the "preemptive use of the mandatory relief provision to avoid any potential adverse ruling on the pending motions" before default judgment or dismissal entered].)  Thus, the ruling at issue cannot be affirmed on the basis that mandatory relief was warranted.  (Cf. *Younessi*, at pp. 1147–1149.)

and loose with the pertinent legal rules and procedures.' " (*Hopkins & Carley v. Gens* (2011) 200 Cal.App.4th 1401, 1415.)

A party seeking discretionary relief under section 473(b) " ' "on the basis of mistake or inadvertence of counsel," ' " as HUM CPR does here, " ' "must demonstrate that such mistake, inadvertence, or general neglect was excusable." ' "[4] (*Comunidad en Accion*, *supra*, 219 Cal.App.4th at p. 1132, quoting *Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 258.) Due to the high professional standard attorneys are held to, "the excusability standard under section 473 is often difficult to meet where a client seeks relief for the errors or omissions of [the client's] attorney." (*Minick*, *supra*, 3 Cal.App.5th at p. 26.) This is because in determining whether counsel's mistake was excusable, a court evaluates " ' "whether 'a reasonably prudent *person* under the same or similar circumstances' might have made the same error.["] [Citation.] In other words, the discretionary relief provision of section 473 only permits relief from attorney error "fairly imputable to the client, i.e., mistakes anyone could have made." [Citation.] "Conduct falling below the professional standard of care, such as failure to timely object or to properly advance an argument, is not therefore excusable. To hold otherwise would be to eliminate the express statutory requirement of excusability and effectively eviscerate the concept of attorney malpractice." ' " (*Comunidad en Accion*, at p. 1132, quoting *Zamora*, at p. 258.)

---

[4] An exception to the excusability requirement "allows relief where the attorney's neglect, although inexcusable, was so extreme as to constitute misconduct effectively ending the attorney-client relationship." (*Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 682.) HUM CPR does not argue that this "abandonment" exception applies.

We review the trial court's grant of discretionary relief under section 473(b) for an abuse of discretion. (*Zamora v. Clayborn Contracting Group, Inc.*, *supra*, 28 Cal.4th at pp. 257–258.) A grant of discretionary relief under section 473(b) " ' "shall not be disturbed on appeal absent a clear showing of abuse," ' " which requires demonstrating that the ruling " 'exceed[ed] the bounds of reason.' " (*Minick*, *supra*, 3 Cal.App.5th at p. 24.) Under this standard, the court's factual findings "are entitled to deference." (*Ibid.*) But the court's "exercise of discretion must rest on correct legal premises," meaning it is " ' "grounded in reasoned judgment and guided by legal principles and polices appropriate to the particular matter at issue," ' " and "in that respect our review is de novo." (*Id.* at p. 25.)

### B.     HUM CPR Was Not Entitled to Relief Under Section 473(b).

We begin by addressing the scope of the issue on appeal. Although HUM CPR argued below that it substantially complied with section 21167.4, it now abandons this position. According to HUM CPR, "there is no dispute before this court nor was there any dispute [below about] applying section 21167.4," and the only issue presented is whether the trial court erred by granting discretionary relief under section 473(b). (Capitalization and underscoring omitted.) Accordingly, we do not decide whether there was substantial compliance with section 21167.4, and we assume there was not. We consider only whether the failure to file the request for a hearing was legally excusable, warranting relief under section 473(b).

We begin by rejecting the County's initial argument that HUM CPR's request for discretionary relief under section 473(b) was procedurally improper. In relevant part, the statute provides that "[a]pplication for this relief shall be accompanied by a copy of the answer or other pleading proposed to be filed therein, otherwise the application shall not be granted,

11

and shall be made within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order or proceeding" from which the party seeks relief. (§ 473(b).) The County points out that HUM CPR sought relief in its opposition to the motion to dismiss, not a separate "application" filed "after" dismissal occurred, and did not simultaneously submit a copy of the request for a hearing under section 21167.4(a).

We agree with HUM CPR that the County waived this issue by failing to raise it below. The County did not previously object that HUM CPR's request for relief under section 473(b) was procedurally improper for any of the reasons now advanced. In any case, " 'substantial compliance' with statutory requirements is all that is required" to obtain relief under section 473, "and . . . rigid application of the requirements 'fails to give full remedial effect to the statute.' " (*Grappo v. McMills* (2017) 11 Cal.App.5th 996, 1010.) Thus, even assuming that HUM CPR did not technically comply with all the procedural requirements for seeking relief under section 473(b), reversal on this basis is not warranted.

Reversal is nevertheless required because, as we turn to explain, the failure to file a written request for a hearing was not legally excusable, leaving discretionary relief under section 473(b) unavailable.

"The 'reasonably prudent person standard' established by the Supreme Court . . . gives an attorney the benefit of . . . [discretionary] relief [under section 473(b)] only where the mistake is one which might ordinarily be made by a person with no special training or skill. Obviously, an untrained person might be expected to make mistakes when performing the functions of an attorney; the acknowledged desirability of professional legal training presumes this to be so. Just as obviously, an attorney acting within his or her professional capacity is held to a different standard of care and may not

be excused by section 473 from errors occurring during the discharge of strictly professional duties." (*Garcia v. Hejmadi*, *supra*, 58 Cal.App.4th at p. 684.)

The mistake here in failing to file the written request for a hearing under 21167.4(a) was clearly "one involving professional skill," not one, such as a calendaring error, that " ' "anyone could have made." ' " (*Comunidad en Accion*, *supra*, 219 Cal.App.4th at p. 1135.)  HUM CPR does not claim that its counsel was unaware of 21167.4(a)'s requirements or interpreted them to authorize an oral request for a hearing.  Rather, it claims that its counsel's mistake was in thinking that filing and serving a request would be "superfluous" given the discussion at the December 23 hearing about moving the case forward.  In other words, HUM CPR does not claim that its counsel inadvertently failed to meet the 90-day deadline, but it instead claims that its counsel consciously decided that the request did not need to be submitted.

"An honest mistake of law is a valid ground for relief when the legal problem posed ' "is complex and debatable." ' [Citations.]  The controlling factors in determining whether a mistake of law is excusable are the reasonableness of the misconception and the justifiability of the failure to determine the correct law.  [Citations.]  'Where the court finds that the alleged mistake of law is the result of professional incompetence based upon erroneous advice [citation], general ignorance of the law or lack of knowledge of the rules [citation], or unjustifiable negligence in the discovery or research of the law, laxness or indifference [citations][,] normally relief will be denied.' " (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 611.)

The requirements of section 21167.4 are neither complex nor debatable. The statute has been consistently interpreted for years to require a CEQA

13

petitioner to file a written request for a hearing within 90 days of filing its petition or face *mandatory* dismissal of the case. The trial court cited three circumstances justifying relief under section 473(b): the court clerk's initial mistake in calendaring the merits hearing on December 27, the parties' exchange at the December 23 hearing, and the notion that HUM CPR had not "sat on [its] hands." But none of these circumstances support the court's implied finding that HUM CPR's counsel reasonably and justifiably concluded that it was unnecessary to comply with section 21167.4's strict requirements mandating the submission of a written request for a hearing.

First, HUM CPR's counsel could not reasonably rely on the clerk's mistaken calendaring of the December 27 merits hearing to conclude that a request for a hearing was unnecessary. Both below and on appeal, HUM CPR has focused on the idea that its failure to file the request for a hearing was inconsequential because the County had *notice* that a merits hearing was being sought. But even assuming that HUM CPR reasonably (although incorrectly) believed that the County received notice of the December 27 date, and thus had notice that a merits hearing was desired, notice is not the only purpose of section 21167.4(a)'s hearing-request requirement. Another purpose is to promote the prompt resolution of CEQA claims by triggering the additional deadlines under section 21167.4(c) for completing briefing and holding a hearing. (See *County of Sacramento*, *supra*, 180 Cal.App.4th at p. 950.) The mistaken calendaring of a hearing for December 27 provided no basis to conclude that this purpose was met, because no briefing schedule was ever set based on the December 27 date. Furthermore, HUM CPR noticed the hearing on the record motion for December 23, meaning that counsel could not have possibly expected a merits hearing to go forward on December 27. In fact, the December 27 date was vacated before

14

section 21167.4(a)'s 90-day deadline had run, removing any doubt about whether the scheduling mistake obviated the need to file a hearing request.

Second, HUM CPR's counsel could not reasonably rely on the exchanges at the December 23 hearing to conclude that a request for a hearing was unnecessary. HUM CPR claims that its counsel reasonably believed that filing a hearing request was superfluous because the parties and trial court discussed a briefing schedule and agreed the court would address briefing when ruling on the record motion. But HUM CPR cites no authority for its claim that "a 'reasonably prudent person' under similar circumstances" could have made the same mistake. To the contrary, in light of section 21167.4(a)'s unambiguous and mandatory terms, courts have consistently rejected similar arguments.

For example, in *County of Sacramento*, the petitioner claimed it should be forgiven for having failed to comply with section 21167.4 because " '[i]t would have been an exercise in futility to file and serve a notice of hearing on the merits while the parties were negotiating and extending the time to prepare the Administrative Record, which is a prerequisite to briefing and eventually conducting the hearing.' " (*County of Sacramento*, *supra*, 180 Cal.App.4th at p. 951.) The Third District Court of Appeal disagreed, because "all [the petitioner] had to do was 'request a hearing' and serve notice *of that request*. The setting of the actual hearing date, and the briefing schedule to proceed the hearing, could have come later, 'upon application of any party.' " (*Id.* at pp. 951–952, quoting § 21167.4(a) & (c).) In turn, even once the deadline for completing briefing was triggered, it could still be extended for "good cause," which "may include . . . determination of the completeness of the record of proceedings . . . and the length of the record of

15

proceedings and the timeliness of its production." (§ 21167.4(c); see *County of Sacramento*, at p. 952.)

Likewise, in *Torrey Hills*, the Fourth District Court of Appeal rejected the argument that filing a request for a hearing was unnecessary once the petitioner's counsel learned that the trial court "preferred not to set a hearing until after" it heard a pending motion to dismiss based on a separate procedural default. (*Torrey Hills*, *supra*, 186 Cal.App.4th at pp. 434, 442.) The appellate court explained that section 21167.4(a) "did not require [the petitioner] to obtain a hearing date. Rather, the statute merely required [the petitioner] to file and serve a *request* for a hearing date, and it would not have been futile to make the request," since "a briefing schedule and hearing date could be established later 'upon application by any party.' " (*Torrey Hills*, at p. 442, quoting § 21167.4(c).)

*County of Sacramento* and *Torrey Hills* teach that filing a request for a hearing is not superfluous merely because setting a briefing schedule and the hearing date might not occur immediately in light of other unresolved issues. As these decisions make clear, complying with section 21167.4(a) does not require a hearing date to be set immediately. Rather, filing the request for a hearing is crucial to ensuring that CEQA cases are decided expeditiously because it "serve[s] as a trigger for [the] further statutory requirements" of section 21167.4(c). (*County of Sacramento*, *supra*, 180 Cal.App.4th at p. 951.) In concluding that filing a request for a hearing was unnecessary, HUM CPR's counsel misunderstood both section 21167.4(a)'s mandatory nature and the reasons for it.

Finally, the trial court suggested that relief was warranted under section 473(b) because HUM CPR had not "sat on [its] hands" and wanted to resolve the case promptly. But the failure to file a request for a hearing

16

thwarted the goal of expediency. Had HUM CPR filed the request on the deadline of January 2, 2020, briefing would have been due to be completed on April 1, and the hearing would have been held by May 1. Of course, the court could have—and given the dispute about the administrative record likely would have—extended those deadlines upon a finding of good cause. (See § 21167.4(c).) But no such finding was ever made, and the merits hearing was not held until almost five months after the presumptive date of May 1.

In fact, the trial court did not treat the exchange at the December 23 hearing or HUM CPR's expressed desire to proceed with the case as triggering any deadlines under section 21167.4(c), as a written request would have. (See *County of Sacramento*, *supra*, 180 Cal.App.4th at p. 950 [oral request for hearing does not trigger trial court's obligation to set briefing schedule].) The court did not set a briefing schedule in its February 2020 order when it ruled on the record motion (even though it had earlier indicated it would do so). Instead, it set a briefing schedule in June, briefing was completed on August 27, and the merits hearing was held on September 25. Accounting for the monthlong period the case was stayed while the County pursued its writ petition in this court, these dates complied with section 21167.4—but only because HUM CPR filed its request for a hearing on March 10, 2020, over two months after the deadline.

None of the circumstances here provided a reasonable basis for HUM CPR's counsel to conclude that filing a request for a hearing was unnecessary given the clear law making dismissal mandatory for failure to comply with section 21167.4(a). While we recognize that dismissal may be "a harsh outcome," complying with section 21167.4(a) "imposes no onerous burden" on a CEQA petitioner. (*Dakin v. Department of Forestry & Fire Protection* (1993) 17 Cal.App.4th 681, 687.) Because the mistake in not filing a written request

17

for a hearing was not legally excusable, HUM CPR was not entitled to discretionary relief under section 473(b).

## III.
### DISPOSITION

As to the County's cross-appeal, the judgment is vacated, and the order denying the County's motion to dismiss is reversed. The matter is remanded to the trial court with directions to enter an order granting the motion to dismiss. HUM CPR's appeal is dismissed as moot. The County shall recover its costs on appeal and cross-appeal.

_____

Humes, P.J.

WE CONCUR:

_____

Margulies, J.

_____

East, J. *

*Judge of the Superior Court of the City and County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*Hum CPR Affiliates et al. v. County of Humboldt et al.*, A161918